## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CLIFFORD McCULLOUGH,

        Plaintiff,

v.                                                     Case No. 8:24-CV-01358-AEP

CIRKUL INC,

        Defendant.

_____/

## ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 88) and Plaintiff's Motion for Summary Judgment (Doc. 90). Plaintiff initiated this action against his former employer, Defendant Cirkul Inc. ("Cirkul"), alleging Defendant discriminated against him by failing to promote him due to his race, sex, and age. Plaintiff also alleges that Defendant retaliated against him for complaining about such discrimination and created a hostile work environment. Defendant now seeks summary judgment on the remaining counts[1] in Plaintiff's Complaint. Plaintiff also seeks summary judgment on the remaining counts. For the reasons state herein, Defendant's Motion (Doc. 88) is granted.

---

[1] This court previously dismissed Count Four, Plaintiff's sex discrimination claim (Doc. 43). Also, the Complaint uses the moniker "Count Four" twice: for the sex discrimination claim and for the hostile working environment claim. Since the sex discrimination claim has been dismissed, this Order addresses specifically addresses Count One – Racial Discrimination, Count Two – Age Discrimination, Count Three – Retaliation, and Count Four -  Hostile and Abusive Working Environment.

## I.    Background

Defendant Cirkul Inc. is a beverage technology and manufacturing company. Doc. 88-5 at 982-985. Plaintiff Clifford McCullough, an African American male, began working for Cirkul on October 27, 2022 at the age of 62 as a Machine Operator at Cirkul's Tampa, Florida facility on the overnight shift. Doc. 88 at 2. Plaintiff reported directly to Shift Supervisor Ryan Morgan. *Id.* During a shift meeting in November 2022, Production Manager Jeremy Galloway told employees that music using the n-word was prohibited in the workplace. *Id.* at 3. Following that meeting, on November 3, 2022, Plaintiff emailed Talent Acquisition Manager Emily Wood to compliment the company's workplace culture. *Id.*

On November 15, 2022, Cirkul hired Ozzie Robertson[2], a 32-year-old Black man as a Material Handler (Loader). Doc. 88 at 3; Doc. 88-16 at 1. In November 2022 and December 2022, Mr. Robertson called Plaintiff the n-word. Doc. 88-2 at 627-628; Doc. 88-16 at 7. In response to the November 2022 incident, Plaintiff expressed his dissatisfaction with Mr. Robertson's use of the word and demanded that Mr. Robertson respect him. Doc. 88 at 10. In response to the December 2022 incident, Plaintiff reported the incident to his supervisor, Mr. Morgan. Doc. 88-10 at 987; Doc. 88 at 406; Doc. 88-2 at 506; Doc. 88-16 at

---

[2]  In his Complaint and deposition, Plaintiff refers to Mr. Robertson as "Mr. Robinson." This Court uses "Mr. Robertson," as that is the surname Mr. Robertson provided in his incident report. Doc. 88-17 at 1063.

1053. Plaintiff asserts that other Black employees also referred to Plaintiff using the n-word at various, imprecise times during Plaintiff's employment at Cirkul. Doc. 88-2 at 509-513.  Plaintiff also testified that at some point during his time at Cirkul, Mr. Robertson was physically aggressive toward Plaintiff by blocking Plaintiff from walking, pushing Plaintiff, and putting his hands in Plaintiff's chest approximately three to four times. Doc. 88-2 at 657. Defendant's policy that outlines reporting procedures for harassment is found in the Cirkul Employee Handbook. Doc. 88-8 at 992. According to the Cirkul Employee Handbook, an employee with concerns or complaints of discrimination, harassment, or retaliation should provide a written notice to the employee's immediate supervisor, human resources, a supervisor or officer, or other designee of the opposite gender. Doc. 88-8 at 992. Plaintiff did not report the November 2022 n-word incident. Plaintiff claims he reported other Black employees' use of the n-word to supervisors and human resources personnel, but they never addressed the use of the n-word. Doc. 88-2 at 514. Plaintiff reported the December 2022 n-word incident to his supervisor, Mr. Morgan. Doc. 88-2 at 506. When Plaintiff reported the December 2022 use of the n-word, Mr. Morgan verbally reprimanded Mr. Robertson and directed him not to use the word at the workplace. Doc. 88 at 4; Doc. 88-16 at 8. To Defendant's knowledge, Mr. Robertson did not use the word again. Doc. 88 at 13; Doc. 88-16 at 1053. According to Defendant, the December 2022 incident with Mr. Robertson was the only time of which Defendant is aware that Plaintiff reported the use of the

n-word by a Cirkul employee. Doc. 88 at 4; Doc. 88-16 at 1054. After reporting the December 2022 incident to Mr. Morgan, Plaintiff also emailed People Business Partner Camila Casanova on December 16, 2022, requesting to speak with someone about the incident. Doc. 93-1 at 1120; Doc. 88 at 4; Doc. 88-16 at 1053. Ms. Casanova investigated Plaintiff's concerns, but she was not able to substantiate most of his allegations, and instead, the investigation revealed that Plaintiff, not Mr. Robertson, was generally the aggressor. Doc. 88-16 at 1053. Because tensions between Plaintiff and Mr. Robertson continued to escalate, Ms. Sheeder directed both parties to stay away from one another. Doc. 88-16 at 1054; Doc. 88-17 at 1062. However, during the overnight shift on January 12-13, 2023, the tensions boiled over into a verbal altercation Doc. 88-16 at 1056. Defendant conducted an internal investigation of the altercation, which required Cirkul employees who witnessed the event to complete incident report forms. Doc. 88-17 at 1062-1065; Doc. 88-16 at 1056. According to the report completed by Shift Supervisor Pam Sheeder, she had directed Mr. Roberston and Plaintiff to stay away from each other and assigned them to different areas. Doc. 88-17 at 1062. Ms. Sheeder noted that it did not matter where she assigned Mr. Robertson, she would also find Plaintiff there. Ms. Sheeder also noted she had seen both Mr. Robertson and Plaintiff approach and follow one another. *Id.* According to Mr. Robertson's report, the January 12-13th altercation started because Mr. Robertson took a machine piece that Plaintiff wanted to use to "rig out" the machine. Doc. 88-17 at 1063. When Mr. Robertson picked up the

machine piece, Plaintiff snatched it out of Mr. Robertson's hand, and a verbal argument ensued. *Id.* According to the report completed by Yekkekiccia Mahmoud, she did not see a physical assault; she only heard loud commotion. *Id.* at 1064. Ms. Mahmoud also added that Plaintiff bullied Mr. Robertson by repeatedly going to Mr. Robertson's machine and antagonizing him. *Id.* Witness Turek White noted that although he did not see any physical harm, he heard loud yelling. *Id.* at 1065. Mr. White further commented that for some time, Plaintiff had always approached Mr. Robertson and intruded into Mr. Robertson's personal space. *Id.* Based on Defendant's internal investigation of the January 12-13th altercation, Defendant concluded Plaintiff was the initial aggressor and decided that terminating Plaintiff's employment was the best decision for the company's productivity and the safety of other employees. *Id.* at 1056-1058. On January 13, 2023, Cirkul terminated Plaintiff, citing his "disruption on the production floor" and that he was "confrontational with other employees." Doc. 88 at 409; Doc. 88-16 at 1059; Doc. 88-13 at 1002.

In November 2022, Cirkul posted a "production supervisor" position to Indeed that required, *inter alia*, supervisory or management experience. Doc. 88-16 at 1054. The supervisory position required three years of manufacturing supervision or management experience. Doc. 93-1 at 1122. Although Plaintiff had used the Indeed website to apply for three different positions with Cirkul, he did not apply for the production supervisor position. Doc. 88-16 at 1049; Doc. 88-4 at 981; Doc. 88-2 at 563, 725, 726-727. However, Pamela Sheeder—a 52-

year-old White woman—applied for the role in late November 2022. Doc. 88-16 at 1055. Ms. Sheeder possessed over 13 years of management experience at large stores, including Walmart and Sam's Club, and she began working at Cirkul as a shift supervisor on December 12, 2022. Doc. 88 at 407; Doc. 88-7 at 987. This is also when she became Plaintiff's supervisor. Doc. 88 at 407. Given the growing tension between Plaintiff and Mr. Robertson, Ms. Sheeder directed Plaintiff and Mr. Robertson to stay away from one another and assigned them to different machines. Doc. 88 at 408; Doc. 88-16 at 1056; Doc. 88-17 at 106. Nevertheless, during the overnight shift on January 12-13, 2025, Plaintiff repeatedly approached Mr. Roberston at the machine on which Mr. Robertson was working, which resulted in a verbal altercation. Doc. 88-16 at 1057-1058. On January 13, 2023, Mr. Galloway and Anthony Howell, Director of People Operations, decided to terminate Plaintiff due to his conduct. Doc. 88-16 at 1058; Doc. 88-13 at 1002. Although the record is unclear and disjointed, Plaintiff seems to allege the Defendant fired him, instead of Mr. Robertson, because of Plaintiff's older age. Doc. 1 at 1, 7; Doc. 88-2 at 687. Specifically, Plaintiff alleges that during his termination meeting, Jeremy Galloway told Plaintiff he was being fired because he cannot get along with young people and too stuck in his old ways. *Id.*

## II.    Legal Standard

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of some factual disputes between litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48 (emphasis in original). The substantive law applicable to the claims will identify which facts are material. *Id*. at 248. In reviewing the motion, courts must view the evidence and make all factual inferences in a light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted). The movant "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at 323). The burden then shifts to the nonmovant "to rebut that showing by producing

affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

### III.    Analysis

In his Complaint, Plaintiff has brought claims for racial discrimination and sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation, and hostile working environment. This Court dismissed Plaintiff's sex discrimination claim in response to Defendant's Motion to Dismiss. Doc. 43.

### A. Race and Age Discrimination

Title VII prohibits employment discrimination on the basis of race. *Ricci v. DeStefano*, 557 U.S. 557 (2009). The ADEA prohibits employers from discriminating against an employee aged 40 or older because of his age. 29 U.S.C. § 623 (a)(1); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). To successfully assert race discrimination in violation of Title VII, a plaintiff must show: 1) he belongs to a protected class; 2) he was qualified to do the job; 3) he was subjected to an adverse employment action; and 4) his employer treated similarly-situated employees outside his class more favorably. *Poer v. Jefferson County Commission*, 100F.4th 1325 (11th Cir. 2024). To successfully assert an age-based discrimination claim under the ADEA, a plaintiff must show his age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S.

167 (2009); *Reed v. Forney Industries, Inc.,* 800 Fed.Appx. 782 (11th Cir. 2020). In asserting a race-based or age-based discrimination claim, a plaintiff may present direct or circumstantial evidence. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023); *Schoenfeld v. Babbit*, 168 F.3d 1257, 1266 (11th Cir. 1999). Courts assessing such claims based on circumstantial evidence generally apply the burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff asserting a Title VII race or age discrimination claim must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Reed v. Forney Industries, Inc.*, 800 Fed.Appx. 782 (11th Cir. 2020). Once the plaintiff establishes a *prima facie* case of discrimination, then the employer must respond with a legitimate, nondiscriminatory reason for its actions. *Id.* If the employer shows such a reason, the burden then shifts back to the plaintiff to prove the employer's reason was a pretext to mask discrimination. *Id.*

### 1) Race and Age Discrimination: Failure to Promote

To establish a "failure to promote" claim of race or age discrimination, the plaintiff must establish not only that he was qualified for the publicized job, but also that he actually applied for the job. *See Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998); *Giles v. BellSouth Telecommunications,* Inc., 542 Fed.Appx. 756 (11th Cir. 2013); *Howell v. Compass Group*, 448 Fed.Appx.30 (11th Cir. 2011). Plaintiff anchors his first race and age discrimination claim in the fact that Cirkul hired Ms. Sheeder—a 52-year-old White woman—as a shift supervisor, even though she was not qualified

for the position. Doc. 1 at 1. It is uncontroverted that Plaintiff is a Black man who was 62-years-old at the time of his employment with Cirkul. Doc. 88 at 404. However, Plaintiff never applied to be a Cirkul shift supervisor. Doc. 88-16 at 1049; Doc. 88-4 at 981; Doc. 88-2 at 563, 725, 726-727. Therefore, Plaintiff's failure to promote claim fails because he never applied for the position. In turn, he has not offered any evidence to show that he, as an applicant for a promotion, was similarly-situated to another applicant who was not part of his protected classes, and Cirkul treated that similarly-situated applicant more favorably by offering them the position.

Plaintiff takes grievance with the fact that Cirkul merely posted the supervisor position to Indeed and did not affirmatively inform Plaintiff about the job opening. Doc. 88-2 at 560, 725-726. However, when there is a formal notice of a job's availability, whereby a company posts openings or takes applications for the position, there is no duty for the company to consider potential applicants who may have been interested but were not on notice about the opening. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984); *See Jones v. Firestone and Rubber Co.*, Inc. 977 F.2d 527 (11th Cir. 1992); *Giles v. BellSouth Telecommunications, Inc.,* 542 Fed.Appx. 756 (11th Cir. 2013). In the present case, Cirkul posted the opening and accepted applications for the production supervisor position via Indeed—a universally available job-search engine. According to Cirkul, Plaintiff had applied for Cirkul job openings three times via the Indeed website. Doc. 88-16 at  1049; Doc. 88-4 at 981. Therefore, not only did Defendant accept applications

for the supervisor role via a publicly available website, but also Plaintiff had demonstrated his knowledge and ability to access available, open roles within the company. Simply stated, Plaintiff cannot claim Defendant discriminated against him by not hiring him for a position for which he did not apply. Therefore, Plaintiff failed to set out a *prima facie* case of race or age discrimination based upon a failure to promote Plaintiff.

> 2) Race and Age Discrimination: Termination

Plaintiff also alleges race and age discrimination claims based on his allegations that Cirkul terminated him because he was a 62-year-old Black man. To successfully assert race discrimination in violation of Title VII and age discrimination in violation of ADEA based upon his termination, Plaintiff must show: 1) he belongs to a protected class; 2) he was qualified to do the job; 3) he was subjected to an adverse employment action; and 4) his employer treated similarly-situated employees outside his class more favorably. *Poer v. Jefferson County Commission*, 100F.4th 1325 (11th Cir. 2024). Moreover, under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019). During the *prima facie* phase, Plaintiff must prove that another employee who was not part of the Plaintiff's protected class, but was similarly situated in all material respects, was treated more favorably than Plaintiff. *Id.* A similarly-situated comparator will have engaged in the same basic conduct (or misconduct) as the Plaintiff; will have been subject to the same employment policy, guidelines, or rules

as the Plaintiff; will have been under the same supervisor as the Plaintiff; and will share the Plaintiff's employment or disciplinary history. *Id.* If Plaintiff successfully establishes a *prima facie* discrimination claim, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse action. *Id.* at 1336. If the employer successfully articulates a non-discriminatory reason for its action, to avoid summary judgment, the Plaintiff must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination. *Id.* A reason is not a pretext for discrimination unless the plaintiff shows *both* that the reason was false *and* that discrimination was the real reason. *Id* (emphasis in original). To show pretext, an employee asserting a Title VII employment discrimination claim must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its adverse employment action that a reasonable factfinder could find them unworthy of credence. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1308 (11th Cir. 2023). The employee is not allowed to recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer. *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000). Provided that the proffered non-discriminatory reason given by the employer for its adverse employment action is one that might motivate a reasonable employer, the employee asserting the Title VII employment discrimination claim must meet that reason

head on and rebut it, and he cannot succeed by simply quarreling with the wisdom of that reason. *Id.*

Regarding Plaintiff's race discrimination claim related to his termination, Plaintiff failed to proffer a comparator. There is neither record evidence nor argument proffered by the Plaintiff of the existence of another Cirkul employee who was not a racial minority, was similarly situated in all material respects as Plaintiff, and was treated more favorably than Plaintiff. Because Plaintiff did not provide a comparator regarding the race discrimination claim, he failed to establish a *prima facie* case of race discrimination. Moreover, even if Plaintiff had successfully established a *prima facie* claim, Plaintiff's claim still fails because he offered no evidence to rebut Defendant's legitimate, non-discriminatory reason for the termination. Whereas Plaintiff alleges he was fired because he is a 62-year-old Black man, Defendant proffered evidence to show that the catalyst behind their decision was Plaintiff's volatile behavior. Doc. 88-16 at 1053, 1056-1059. Specifically, the record is clear that tensions had been escalating between Plaintiff and Mr. Robertson, so Ms. Sheeder directed both parties to stay away from each other. Doc. 88 at 408; Doc. 88-16 at 1056; Doc. 88-17 at 106. Nevertheless, the discord between the two employees climaxed on January 12-13, 2023 to a verbal altercation. Doc. 88-16 at 1057-1058. Based on Cirkul's internal investigation of the January 12th-13th altercation, Cirkul concluded Plaintiff was the initial aggressor and consequently terminated him. Doc. 88-16 at 1058; Doc. 88-13 at 1002. Plaintiff has offered no evidence to demonstrate any implausibilities, inconsistencies, incoherencies, or

contradictions in the Defendant's decision to terminate him. In fact, it is not contested that Defendant fired Plaintiff on January 13, 2023, just hours after Plaintiff's altercation with Mr. Roberston. Because Plaintiff did not identify a comparator, and he cannot show that Cirkul's reason for firing him was pretextual, his claim that his termination was based on race discrimination fails.

Regarding Plaintiff's age-discrimination claim, Plaintiff must show his age was the but-for cause of the termination to successfully assert an age-based discrimination claim under the ADEA. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Reed v. Forney Industries, Inc.,* 800 Fed.Appx. 782 (11th Cir. 2020). Moreover, the *McDonnell Douglas* burden-shifting framework is used to determine the merit of an age discrimination claim (*Castro v. School Bd. Of Manatee County*, Fla. 903 F.Supp.2d 1290 (M.D. Fla. 2012). In the present case, Plaintiff's age discrimination claim seems to be based on alleged disparate treatment between Plaintiff (62 years old)[3] and Mr. Robertson (32 years old).[4] Doc. 88-3 at 853. Plaintiff has not unequivocally proffered a comparator to demonstrate that Defendant treated more favorably a Cirkul employee who was similarly situated in all material respects as Plaintiff but younger than 40 years old. Nevertheless, for the sake of conducting a thorough analysis, this Court assumes Mr. Robertson is the comparator for Plaintiff's age discrimination claim. Although the record is unclear and disjointed, it appears that Plaintiff alleges the Defendant fired him, instead of Mr. Robertson,

---

[3] Plaintiff's age when Defendant hired him.
[4] Mr. Robertson's age when Defendant hired him.

because of Plaintiff's older age. Doc. 1 at 1, 7; Doc. 88-2 at 687. Specifically, Plaintiff alleges that during his termination meeting, Jeremy Galloway told Plaintiff he was being fired because he cannot get along with young people and too stuck in his old ways. *Id.* In response, Defendant offers it terminated Plaintiff because its investigation determined Plaintiff was the aggressor of the January 12-13[th] altercation, and it feared his increasingly hostile behavior threatened workplace declines safety. Doc. 88-16 at 1056-1058. Plaintiff has offered no evidence or argument to rebut Defendant's stated reason for the termination. Furthermore, Plaintiff did not unequivocally proffer a comparator for his age discrimination claim; however, even if Plaintiff could demonstrate that Mr. Robertson is a comparator, it would still be of no consequence because Plaintiff has not demonstrated that Defendant's proffered nondiscriminatory reason for the termination was merely a pretext. Therefore, Plaintiff's claim that his termination was based on age discrimination fails.

### B. Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show: 1) he engaged in a statutory protected activity; 2) he suffered an adverse employment action; and 3) there was a causal connection between the protected activity and the adverse employment action. *Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 782 (11th Cir. 2024). Once a *prima facie* case has been established, the burden shifts to the defendant to rebut the presumption of retaliation by producing a legitimate reason for the adverse employment action. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d

1056, 1059 (11th Cir.1999). If the defendant offers a legitimate reason, the presumption of retaliation disappears, and the plaintiff must show that the employer's proffered reason was merely pretext. *Id.* In the instant case, Plaintiff's position is: 1) he engaged in statutorily protected conduct when he complained about the use of the n-word; 2) he suffered an adverse employment action when Cirkul fired him on January 13, 2023; and 3) a causal connection exists because Cirkul terminated him after he complained about the use of the n-word, with no cause other than the allegation that Plaintiff can't get along with young people and is too old in his ways. Doc. 1 at 1,7; Doc. 88-2 at 551, 638; Doc. 88-3 at 868, 882-883. As to whether the Defendant engaged in any statutorily protected conduct in relation to his age, Defendant asserts that Plaintiff never made any complaints of age-based discrimination. Doc. 88 at 415; Doc. 88-16 at 1059. As to whether the Defendant engaged in any statutorily protected conduct in relation to his race, Defendant does concede that Plaintiff complained about Mr. Robertson's use of the n-word, but Defendant also asserts that it immediately took remedial action by directing Mr. Robertson not to use the word. Doc. 88 at 415; Doc. 88-16 at 1053. Significantly, Defendant argues that Plaintiff cannot establish the requisite causal connection between Plaintiff's alleged protected activity and his separation, as Plaintiff's aggressive behavior towards Mr. Robertson was the intervening cause that severed any causal inference created by Plaintiff's complaint and termination. Doc. 88 at 415-416. Last, Defendant contends that the legitimate, non-discriminatory, and non-pretextual reason for its decision to terminate Plaintiff was

Plaintiff's volatile workplace behavior that violated Defendant's policy and threatened the safety of the workplace. *Id.* at 416-417.

Mere temporal proximity between a plaintiff's protected conduct and the employer's adverse action must be very close to suggest causation in a Title VII retaliation case. *Jefferson, v. Sewon Am., Inc.*, 891 F.3d 911, 926 (11th Cir. 2018). While close temporal proximity between the protected conduct and the adverse employment action can establish pretext for retaliation in violation of Title VII when coupled with other evidence, temporal proximity alone is insufficient. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1328 (11th Cir. 2020) (temporal proximity of less than two months was insufficient by itself to establish pretext); *Hurlburt v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286,1298 (11th Cir. 2006) (the close temporal proximity of two weeks was evidence of pretext but "probably insufficient to establish pretext by itself"); *Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985 (11th Cir. 2020) (lapse of three months between employee's supervisor's alleged discovery that employee had contacted the Equal Employment Opportunity Commission (EEOC) and supervisor's recommendation to fire employee was too long to permit an inference of causation based on temporal proximity alone). Here, Plaintiff has presented no evidence or argument to show a causal link between his complaint about the use of the n-word and his termination. Therefore, the only evidence at this Court's disposal to analyze the causal link between the protected conduct and adverse action is the temporal proximity between Plaintiff's complaint and his termination. On December 16,

2022, Plaintiff reported to Cirkul that Mr. Robertson called Plaintiff the n-word.
Doc. 88-10 at 997; Doc. 88 at 406; Doc. 88-2 at 506; Doc. 88-16 at 1053. Shortly
thereafter, Mr. Morgan verbally reprimanded Mr. Robertson and instructed him
not to use the word in the workplace. Doc. 88-16 at 1053. On January 13, 2023,
Cirkul terminated Plaintiff's employment, citing his "disruption on the production
floor" and that he was "confrontational with other employees." Doc. 88-13 at
1002; Doc. 88 at 409; Doc. 88-16 at 1059. Therefore, the twenty-eight days that
passed between Plaintiff's protected conduct and his termination cloud whether
Plaintiff can establish that his complaint caused Defendant to terminate him.
Moreover, the intervening discovery of employee misconduct can sever the causal
inference created by close temporal proximity. *Berry v. Crestwood Healthcare LP*, 84
F.4th 1300, 1309 (11th Cir. 2023); *See also Googel v. Kia Motors Manufacturing of
Georgia, Inc.,* 967 F.3d 1121 (11th Cir., 2020*); Schyla M. Jackson, Plaintiff-Appellant, v.
Atlanta Public Schools, Defendant-Appellee*, No. 24-11343, 2025 WL 2223492, at *7 (11th
Cir. Aug. 5, 2025). Thus, even if the Court accepted that Plaintiff can establish that
the timing between his complaint and termination created a causal inference, that
causal inference was broken by the January 12-13th altercation. The results of the
Defendant's investigation into the January 12-13th altercation, in which the
Defendant determined, based upon other employee-witness statements, that
Plaintiff was the aggressor of the altercation and had violated Cirkul policy, break
any causal connection between Plaintiff's race-based complaint and his
termination. Further, as discussed above, the investigation results created a

legitimate, non-discriminatory, and non-retaliatory reason for the Plaintiff's termination.

Again, to prove pretext, an employee must identify "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's justification. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1308 (11th Cir. 2023). An employer has a right to fire an employee for any reason except a discriminatory or retaliatory reason. *See Willis v. Koch Agronomic Services, LLC*, 846 Fed.Appx. 787, 797 (11th Cir. 2021); *Knox v. Roper Pump Company*, 957 F.3d 1237,1240 (11th Cir. 2020). "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter...how mistaken the firm's managers, [we] do not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* It is uncontroverted that tensions between Plaintiff and Mr. Robertson had been brewing. Doc. 88 at 408; Doc. 88-2 at 626-627. In a preliminary attempt to rectify the situation, Ms. Sheeder directed both parties to stay away from one another; nevertheless, Plaintiff and Mr. Robertson clashed, yet again, during the overnight shift of January 12-13, 2023. Doc. 88-17 at 1062; Doc. 88-16 at 1056. Based on an internal investigation, and other employee-witness statements, Defendant concluded that Plaintiff was the initial aggressor and decided that terminating Plaintiff's employment was the best decision for the company's productivity and the safety of other employees. Doc. 88-16 at 1056-1058. In turn, Plaintiff has not presented any evidence to rebut Defendant's stated reason for the termination. Whether Defendant made the correct business decision in firing

19

Plaintiff is not a debate this Court has the authority to determine. Instead, this Court is tasked only with determining whether the Plaintiff's termination was motivated by illegal, discriminatory, or retaliatory intent. To that end, Plaintiff has failed to create a genuine dispute of material fact regarding whether the Defendant's stated reason for terminating him was pretextual.

### C. Hostile Work Environment

To establish a Title VII hostile work environment claim, a plaintiff must show: 1) he belongs to a protected group; 2) he was subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee; 4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and 5) the employer is responsible for such environment. *Copeland v. Georgia Department of Corrections,* 97 F.4th 766 (11th Cir. 2024). Plaintiff alleges the use of the n-word and Mr. Robertson's behavior toward him created a hostile work environment. Plaintiff alleges Mr. Robertson called him the n-word twice. Doc. 88-2 at 627-628. The first time occurred shortly after Mr. Robertson was hired in November 2022, and the second occurrence took place in December 2022. *Id.* Plaintiff only reported the second occurrence. Doc. 88-2 at 627. Plaintiff also alleges other Black employees taunted him with the use of the word, but the record is unclear as to when this occurred, how many times this occurred, and whether Plaintiff reported all such instances. Doc. 88-2 at 632. Furthermore, the December 2022 incident was the only time of which Defendant is aware that Plaintiff reported the use of the n-word by a Cirkul employee. Doc. 88-16 at 1054, 1059. Doc. 88-2 at

628, 633. Defendant responds that Plaintiff failed to provide sufficient evidence of harassing conduct because Plaintiff complained about the use of the n-word only one time. Doc. 88-16 at 1054. Moreover, when Plaintiff complained, Defendant immediately reprimanded Mr. Robertson, and to Defendant's knowledge, Mr. Robertson did not use the word again. Doc. 88 at 415; Doc. 88-16 at 1053-1054. To Defendant's knowledge, Plaintiff never again complained of anyone else using the n-word. Doc. 88-16 at 38 and 44. This Court will address the fourth and fifth prongs of a hostile work environment claim: that the harassment was sufficiently severe or pervasive to alter the conditions of employment and employer liability.

To prove that the harassment was sufficiently severe or pervasive to alter the conditions of employment, a plaintiff must show: 1) he subjectively perceived the conduct to be abusive, and 2) a reasonable person objectively would find the conduct at issue hostile or abusive. *Copeland v. Georgia Department of Corrections*, 97 F.4th 766, 775 (11th Cir. 2024); *Buckley v. Secretary of Army*, 97 F.4th 784 (11th Cir. 2024). To satisfy the subjective element, a plaintiff must subjectively perceive the hostile work environment to be abusive. *Id.* To satisfy the objective element, courts use a totality-of-the-circumstances approach to consider four factors of the alleged harassment: 1) its frequency, 2) its severity, 3) whether it is physically threatening or humiliating, and 4) whether it unreasonably interferes with job performance. *Id.* No single factor is necessary to satisfy the objective inquiry. *Id.* The record indicates that Plaintiff subjectively believed the work environment at Cirkul was hostile due to the use of the n-word. Doc. 1 at 1; Doc. 88-2 at 551.

The analysis now turns to the objective element. Regarding frequency, there is no "magic number" that deems racial insults as sufficiently harassing, but repeated incidents of verbal harassment that continue despite the employee's objections are indicative of a hostile work environment. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269 (11th Cir. 2002). Plaintiff has shown three, discreet instances of the use of the n-word: first, the November 2022 incident with Mr. Robertson; second, the December 2022 incident with Mr. Robertson; and third, the imprecise, indefinite instances when other Black employees used the word. Doc. 88-2 at 509-513, 632. Plaintiff reported the December 2022 incident and the instances when other Black employees used the word. Doc. 88 at 4; Doc. 88-16 at 8; Doc. 88-2 at 513. However, the record is unclear whether the uses of the word by other Black employees occurred before or after Defendant reprimanded Mr. Robertson. Based on the imprecise instances when other Black employees used the word and the one, reported instance where a Cirkul employee used the n-word and corrective action immediately followed, Plaintiff has failed to show that the use of the n-word occurred with enough frequency to create a hostile work environment. To be sufficiently "severe or pervasive," a plaintiff must show the workplace is permeated with discriminatory intimidation, ridicule, and insult. *Tonkryo v. Secretary, Department of Veteran Affairs,* 995 F.ed 828, 837 (11th Cir., 2021). The employer must create an environment that the victim subjectively perceived to be abusive and a reasonable person would find hostile or abusive. *Id.* at 837. Mere utterance of an epithet which engenders offensive feelings in an employee does not

sufficiently affect the conditions of employment to implicate Title VII. *Id.* Harassment is more severe when it involves the participation of supervisors rather than solely peers or subordinates. *Copeland v. Georgia Department of Corrections*, 97 F.4th 766 (11th Cir., 2024). In the present case, Plaintiff does not claim that a supervisor engaged in any harassment or the use of the n-word. Moreover, Plaintiff has failed to offer any evidence to show an environment that a reasonable person would find abusive. To the contrary, the record shows that Plaintiff had an ongoing issue specifically with Mr. Robertson, which Defendant attempted to remedy, and an imprecise issue with a few other employees who used the word to try to get a rise out of Plaintiff. Doc. 88 at 4; Doc. 88-16 at 8; Doc. 88-2 at 513. However, the record shows that the Defendant took reasonable steps to correct the inappropriate workplace comments of which it was aware. Specifically, Defendant physically separated Plaintiff from Mr. Robertson, and Plaintiff himself testified that Defendant conducted three or four meetings about the use of the n-word. Doc. 88-17 at 1062; Doc. 88 at 408; Doc. 88-2 at 543. Therefore, Plaintiff has failed to show that Defendant created an abusive environment; instead, the record shows that Defendant took affirmative steps towards correcting the offensive behavior. Considering the "physically threatening or humiliating" factor, when a coworker threatens to fight a plaintiff, blocks the plaintiff's path, carries a weapon, and remains in the vicinity of the plaintiff in a menacing manner, the coworker's conduct is physically threatening. *See Copeland v. Georgia Department of Corrections*, 97 F.4th 766 (11th Cir., 2024). Here, Plaintiff claims Mr. Robertson threatened to

"kick his ass," "F [him] up," and cut him. Doc. 88-2 at 636; 657. Plaintiff also testified that Mr. Robertson blocked him from walking, pushed him, and put his hands in Plaintiff's chest approximately three to four times. Doc. 88-2 at 657. Therefore, a reasonable jury could find that Plaintiff was subjected to physical threatening harassment. Regarding the "interference with job performance" factor, Plaintiff has failed to present any evidence to show that the alleged conduct interfered with his ability to do his job. Viewing the above, four factors under a total of the circumstances analysis, Plaintiff has failed to substantiate that the harassment was sufficiently severe or pervasive.

The fifth and final element a plaintiff must show to prove a hostile work environment claim is that the employer is responsible for such environment. *Copeland v. Georgia Department of Corrections,* 97 F.4th 766 (11th Cir. 2024). The plaintiff must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action. *Watson v. Blue Circle, Inc.,* 324 F.3d 1252, 1259 (11th Cir., 2003). Actual notice is established by proof that management knew of the harassment. *Id.* When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established. *Id.* Constructive notice is established with the harassment was so severe and pervasive that reasonably management should have known of it. *Id.* If an employer has actual or constructive notice of harassment but takes immediate and appropriate

24

corrective action, the employer is not liable for the harassment. *Id.* at 1261. Here, Defendant outlines its policy and procedures for reporting harassment in the Cirkul Employee Handbook. Doc. 88-8 at 992.  Plaintiff has shown three, discreet instances of the use of the n-word: first, the November 2022 incident with Mr. Robertson; second, the December 2022 incident with Mr. Robertson; and third, the imprecise, indefinite instances when other Black employees used the word. Doc. 88-2 at 509-513. Plaintiff did not report the November 2022 incident, and there is no record evidence that the November 2022 use of the word was severe and pervasive enough to put the Defendant on constructive notice.  Therefore, Defendant cannot be held liable for the alleged harassment that occurred in November 2022. However, Cirkul was put on actual notice of the December 2022 incident because Plaintiff reported it via email. Doc. 88-10 at 997. Once Defendant became aware of the December 2022 incident, it took immediate, corrective action by reprimanding Mr. Robertson and admonishing him not to use the word in the workplace. Doc. 88-16 at 1053. To Cirkul's knowledge, Mr. Robertson never used the word again. *Id.* Therefore, Defendant cannot be held liable for the December 2022 incident because it took appropriate steps to remedy the situation. Regarding the other, indefinite instances when Black employees used the word, Plaintiff testified he reported to his supervisors such instances, but they dismissed him.  Doc. 88-2 at 412. However, Plaintiff also testified that Defendant hosted three or four meetings about the use of the n-word. Doc. 88-17 at 1062; Doc. 88 at 408; Doc. 88-2 at 543. Plaintiff failed to provide a concrete

timeline detailing when the meetings occurred. Because Plaintiff conducted meetings admonishing the use of the n-word and Plaintiff has not provided a precise timeline to demonstrate that the Black employees' use of the n-word continued after the meetings, Plaintiff has failed to show that Defendant is liable for the alleged harassment.

Plaintiff has failed to establish a hostile work environment claim because he has failed to show the harassment was sufficiently severe or pervasive enough to alter the conditions of employment, and he failed to show that the Defendant was responsible for the alleged environment.

**Conclusion**

Accordingly, it is hereby

ORDERED:

1.     Defendant's Motion for Summary Judgment (Doc. 88) is GRANTED as to the remaining counts in Plaintiff's Complaint[5].

2.     Because the Defendant prevailed on its Motion for Summary Judgment, and there remains no issue of material fact in dispute, Plaintiff's Motion for Summary Judgment (Doc. 90) is DENIED.

3.     The Clerk is directed to enter judgment in favor of Defendant and to close this case.

---

[5] This court previously dismissed Count Four, Plaintiff's sex discrimination claim (Doc. 43). This Order enters summary judgment for Defendant for the remaining counts in Plaintiff's Complaint: Count One – Racial Discrimination, Count Two – Age Discrimination, Count Three – Retaliation, and Count Four – Hostile and Abusive Working Environment.

DONE AND ORDERED in Tampa, Florida, on this 11th day of September 2025.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record